of America, oral argument not to exceed 15 minutes per side, Mr. Michael Jablonski for the appellant. May it please the Court, I did reserve three minutes for rebuttal. Your Honors, we're here today as part of an appeal. We believe that the District Court erred. In this particular matter, ASF was denied an application for food stamp program. If one goes back to the agency decision, it's very narrow. The agency relied on three factors, claiming that the candidate lacked the business integrity to be a part of the program. Very specifically on number four, the application, they indicated that he did not tell the truth when he indicated that no other owner that had been previously denied was a part of the business. They relied on three items. They relied on number one, that there was evidence that Nadira We provided affidavits, we provided testimony, and we provided several documentation where 99% of the other documentation, including state filings, federal income tax filings, 2553 IRS filings, every document, 99% of the documents showed that she was not an officer of the company. As for the signing... It does not limit, the factor is not limited to officers, is it? I don't think it is, Your Honor. I think it's three matters. I think the first issue is whether she was an officer. And in their denial, they said that was one of the reasons. We showed by a preponderance that on one bank statement, when she signed a signature card, that a mistake was made. Every other document from years prior showed every filing for the state of Michigan, the Liquor Control Commission, the IRS tax forms, showed that she specifically was not an officer. In fact... Not an officer. Not an officer of the corporate. So he did not lie. Is there a distinction between being an officer and, for example, being an authorized signatory? Well, Your Honor, I think there is a very serious distinction. Number one, if you look at an officer of the corporation, when you look at the bylaws or limited liability company, there comes authority, management responsibilities, there becomes decision-making responsibilities. As a signer on a checking account, there are many, many businesses that there are signers on checking accounts. They are processors. It's a matter of convenience. In this particular case, we demonstrated that this is an only son. It's a mother. He needed someone else just to sign checks in the event he wasn't there. The evidence shows that she didn't sign one check. It was just a necessary convenience. I would point out to the court, too, that in the CFRs or any law, there's no case on point that says that being a signer on a bank account makes you financially involved in a business or operating interest in a business. Is there any case to the contrary? There is not, Your Honor. I believe it's a lack of definition, and I believe this is kind of a first impression where the court and the NFS kind of took an overbroad definition. To imply that a signer on a checking account is financially involved in a business could be disastrous. To define that a signer on a bank account has an operational interest in a business could be disastrous. That's a very overbroad definition, and I think we have to bring that back and say, what is a signer? It's a signer. That's all it is. We can cite numerous occasions where controllers and companies, they're an employee, they sign a check on this. You see people in businesses where an employer might be gone, they say leave a check and have somebody sign it because they're out of the country. It does not mean they have an interest. They're not a pecuniary interest. They don't share in the profits. The signer did not. There's no evidence that the signer was an employee. There's no evidence that the signer had made any management decisions. There's no evidence supported by the tax returns that there's any financial relationship with the exception of one. And that's the third item that the FNS and the lower court relied on. That is the lease relationship. And the only case we could find was an out-of-district case, and that's the Huggins case, which seems to support our position. To be a leasor and a leasee, even though the mother owned the company, that does not mean she has a financial interest in his company. It's a contract relationship where one agrees to pay X amount of dollars plus terms under the condition of a lease. The Food and Nutrition Service relied on the documents, correct? I believe what they relied on, Your Honor, if you go back to the agency decision, an agency decision, the final decision, even on review, they relied on paragraph number four. That's what they relied on on page five of their decision, and they based the documents on one document. That was the document that had the signature card from the bank. I'm trying to figure out kind of what the evidentiary picture was at the time the district court granted summary judgment. So the court had before it from the defendant the documents and the information, whether in the lease or otherwise, that the mother was the landlord. Correct. And what did you offer in opposition to the motion for summary judgment? In regards to the specific lease question, we offered – Well, I want to know what evidence you offered that she did not have – I mean, did you offer the affidavit of your client? Did you offer her affidavit? Did you offer any other business records? Yes, we did. What we did as far as that, we had the tax – we had the Michigan Articles of Incorporation. We had the liquor control. We documented that he was the president's secretary. We had the IRS form, filed the IRS, which is the sub-S election, which indicates the sole shareholder of the operation. What did you offer other than documents? We had an affidavit from my client which indicated that she was – a mistake was made as far as a signer. We had an unauthorized bank letter because the bank just would not give an affidavit on it, but we did get a letter and we explained that to them. We gave them everything we possibly could as far as documentation. It was all laid out. If you would weigh the evidence that we gave them as to the signer capability, it was 99% tilted our way. As to the lease, we just couldn't find anything except the Huggins case. We could not find where any CFR or any documentation said that a leasee and a leasee relationship constitutes a financial involvement or an operational interest in an owning company. We just could not find it. But doesn't the language that the district court pointed to, it isn't limited to operational or involvement or financial interest. It also has that catch-all phrase that no one involved in a previous SNAP violation is associated with this business in any manner. So what does that mean in terms of the lessor-lessee arrangement? Your Honor, I'd look at the reasonable person test on that. You could take that as far out as humanly possible. We're not, though. We're simply taking it to the lessor. I would not imagine. He was the lessee. I would not think that a lessor or a lessee, you would come to the conclusion that they are financially involved in your business. But there isn't a requirement of financial. It's involved in any manner. And that's where my problem is. Your Honor, once again, I think in our argument, I think there needs to be some clarification. It's such an overbroad definition. You could take that to the ends of an employee. You could go so far out. And I think what the FNS is trying to determine is, is there a relationship coming back where there's a profit? Are they managing? Are they actively controlled in this business? I think more than likely that has to be the intent. I can't see any other intent. I think the court is stretching it so far out that the rule doesn't make sense. I think if you look at financially involved or associated, yes, it is his mother, without a question. Without a question, it's his mother. And yes, she owned a building. The Huggins case indicates that's no reason to deny the disclosure issue. I'm not sure. Those questions are so vague, so vague. And the interpretation, the financially involved definition is not there. The overbroad interest is not there. And I don't know how the court puts that back in the box. It can interpret it anyway. She became, she was suspended from this, what, 20 years before this? Well, Your Honor, that's, first of all, that's a question of debate. And the issues. Well, what's the debate? Well, here's the debate, Your Honor. The debate is simply this. When the petition was denied and on the appeal brief, that was not the issue. The issue that we. . . She was suspended. You know better in this case. No, Your Honor. The question was, was she suspended? First of all, the defendant. . . Well, there's no case here. You think there's a fact issue? There's absolutely a fact issue, Your Honor. And the fact issue that we didn't think it was an issue because of the three issues that they denied it for. That was not the issue. The issue they denied it for is those three I told you. Then when they brought up the disqualification, the test is knowingly, knowingly submitting false information. What we brought up at the hearing is that his mother, Nedroba Korobe, was still operating. She had been for 20 years under Paradise Market. But that doesn't mean that she wasn't suspended, does it? I mean, people continue without a license. No, Your Honor. She was active with the FNS. She was active. She sold her business on December 14, 2014. She was active. So the test is, did Mr. Farah knowingly know she was disqualified? How could he know she's been qualified when he worked in the store? They were accepting food stamps. She was going through the program, and nobody said anything. How would he know? And that's a real serious, reasonable question. That should have been a question for the district court to decide. She was never suspended by . . . They didn't . . . There's nothing that they can do to your claim. They did not submit any affidavit. And if you go to the Saunders test, we're both required to submit affidavits. If you go to what was submitted, they submitted an agency report, unsworn, no documentation, support that she was actually disqualified. And that's the problem. And the question comes down to permanent disqualification requires Mr. Farah knowingly, knowingly submit false information, knowingly. We've demonstrated that he didn't know she was assigned. That was a mistake. It was a bank mistake. They're absolutely . . . She was assigned. She's an officer, Your Honor. An officer, Your Honor. An officer, excuse me. An officer, Your Honor. An officer. He did not know she was an officer. He arranged for her to be put on the bank account, he said. He arranged to have her on the bank account but not as an officer. That was a bank mistake without a question. We admit she was an assigner. The officer situation was an absolute mistake on that bank account. The other part of it, the disqualification, knowingly submitting false information, he didn't because she was actively operating. Actively operating. So why . . . And on paragraph 7 of his affidavit . . . She might have been actively authorizing . . . She might have been actively author . . . She might have been actively operating a business. That does not mean, the inference does not flow from there, that she was necessarily participating in the program. Your Honor, the fact of the matter was . . . Or if she was, she might have been operating in disregard of the disqualification. If I might respectfully say, Your Honor, you have two situations. You've got the federal government coming in saying she's disqualified with no proof at all. Just an agency notation that she was. My gentleman fills out the application, actually working in the store, taking the stamps. She doesn't sell her store until December 14, 2014, much after the affidavit. Wouldn't the most natural thing for him to have done in that situation have been to contest the fact of disqualification? And wouldn't that have been easy to determine one way or another? That wasn't the reason for the denial, Your Honor. The reason for the denial was he submitted false information. The reason they cared about his concealment of her involvement was, in fact, her permanent disqualification. But, Your Honor, that's the question. Did he conceal her involvement? You're making the assumption that she was involved. If this Court rules that a lease or relationship . . . That's really not exactly what I was asking you about. But I'm not . . . I'm sorry, Your Honor, I missed the question. Basically, what I said was that the most natural thing here, if she had not been permanently disqualified, would have been to contest that because it could very easily have been established if the notation you complain about was, in fact, a mistake. Your Honor, it's absolutely correct. The reason we did not is because that was not the issue of denial. The issue of denial specifically was he lacked the business integrity because he did not tell the truth on paragraph four. Paragraph four, specifically, of the SNAP application. And that's in their brief that they moved for summary judgment. The only reason that the inference of her involvement is permissible is the lease and then the bank account. I just don't . . . I don't really get the approach, but is your strategy not mine? Your Honor, I dealt with the hand that we were dealt with from the actual documentation and the reasons for denial. I understand that when you appeal a case, you take a look at why they denied you, specifically. You answer those specific questions. The three questions that I told you is the reason for the denial, that she was an officer, that she was a signer, and the lease relationship. Those are the three. Those are the only three. We addressed each and every one of those issues. It's easy to expand what we could have done and should have done. Counsel, I think we have your argument in hand, and your time is well over. Thank you. We will give you your three-minute rebuttal. Good morning, Your Honors. May it please the Court. My name is Jennifer Newby on behalf of the government. The government asks that this court affirm the decision of the district court granting summary judgment. Because the district court properly found there was no genuine dispute as to Mr. Ferra's knowledge of his mother's permanent disqualification when he completed the SNAP application, and number two, of his mother's financial involvement with Easy Party Shop at that time. Was there any proof about the disqualification of his mother at some point in the record? Or did he not deny it, or what happened, and how was that decided? There was no genuine dispute as to his mother's involvement or the existence of her permanent disqualification anywhere in the record until plaintiff's counsel made an allegation at the hearing before the district court, which was never then supported with evidence. What happened in this case is the government filed a motion for judgment on the pleadings, relying on the pleadings, which included the agency decisions. The agency decisions found that Mr. Ferra violated 7 U.S.C. 2021b4 and 7 C.F.R. 278.6e1 when he provided false information regarding his mother's involvement with Easy Party Shop. Those violations necessarily require that Mr. Ferra had the requisite knowledge that his mother had been permanently disqualified. This was an undisputed fact before the agency and then also in the district court. The government filed a motion for judgment on the pleadings. The pleadings included those agency decisions, and then Mr. Ferra submitted information that required the motion to be converted to one for summary judgment and then didn't provide any evidence to support it. Your adversary suggests that the agency decision was not included, and what was included was simply a stray note in a file. I must admit I'm not sure what he's referring to. Our motion, the motion for judgment on the pleadings, which is what is really at issue in this case, which was decided as a motion for summary judgment, certainly attached the agency decisions, which made those findings all based on his knowledge. So when he says that, he's wrong. Correct, Your Honor. So Mr. Ferra never disputed that he was aware of his mother's permanent disqualification until the time of the hearing. At the time of the hearing, Mr. Ferra's counsel, not Mr. Ferra, made the allegation that Mr. Ferra was unaware of his mother's disqualification. The district court then asked Mr. Ferra's counsel if that were true, how come that fact was never raised with the agency or with the court up to that time. Mr. Ferra's counsel had no clear answer. The district court then pointed out that the affidavit that Mr. Ferra submitted in support of his response to the motion for summary judgment also did not support that allegation and that there was no other evidence in the record that evidenced a dispute as to Mr. Ferra's knowledge. And that's the basis on which summary judgment was granted as to that issue. There simply was no dispute. There had never been a dispute before the agency or in the district court regarding Mr. Ferra's knowledge or the existence of his mother's permanent disqualification. What's the standard of review that the district court has from this agency? Is it trite de novo or does it have some other standard on that? It is de novo, Your Honor, which is why the district court was able to consider Mr. Ferra's affidavit that was submitted obviously well after the close of the administrative proceedings. So that also meant that Mr. Ferra could freely have submitted an affidavit to support his allegation that he was unaware, but he did not. Because the government's motion was properly supported by the pleadings, the non-moving party, Mr. Ferra, had an obligation then to demonstrate that there was some evidence that this issue was in dispute. He didn't, and the district court properly found there was no genuine dispute. The district court also properly found that there was no genuine dispute regarding Mr. Ferra's mother's financial involvement with Easy Party Shop. It's undisputed that she was both the landlord of Easy Party Shop and that she was an authorized signer on the corporate bank account and that she could conduct banking on behalf of Easy Party Shop independent of Mr. Ferra. No one disputes those two facts. The district court found that those two facts establish as a matter of law that Mr. Ferra's mother was financially involved with Easy Party Shop. Now that did not mean that his application had to be denied. It just meant that he needed to disclose that information to the agency so the agency could make a determination whether that impacted his eligibility. The reason that his application was denied was his failure to provide that information, not because his mother was a signer on the bank account. Was this number six on this questionnaire that he had, was that considered by the agency or by the court? Number six where he denied that he had a relative who had been signed? Yes, it was, although it wasn't a focal point of the case. The dispute had always been from Mr. Ferra's side that his mother was not financially involved and she was not an officer, she was not involved in the business. So that sort of had a background role, but yes, that was also a failure to provide correct information. Well, if he knew it, why then by answering no, that would disqualify him by itself, would it not? Correct, Your Honor, it would. But that just didn't help. That was not the focal point of the agency. Correct, Your Honor. Food and Nutrition Services is charged with making sure that the immense resources put into the SNAP program are used to further the purposes of the program and not for fraud. In order to do this, retailers must disclose any relevant information on their application. It's so important for FNS to be able to receive candid and accurate information from retailers in order to assess their business integrity and reputation that their regulations require that a retailer that submits false information on an application that could affect eligibility must be permanently denied. And that's what happened in this case. Mr. Ferrin knew that his mother had been permanently disqualified when he completed the application and that she was financially involved with Easy Party Shop and he failed to disclose that information. His application was then permanently denied as a result, which was a valid administrative action. The district court properly granted summary judgment and the government asks that this court affirm that decision. Was there any kind of proof before either the agency or before the district court that his mother had been operating and accepting these SNAP coupons or whatever they're called for 20 years and nobody said anything and she had a relationship with the agency? Was that anywhere in the record? No, Your Honor. What was in the record is that she was permanently disqualified for her involvement with Food Mart Market, I think. I'm sorry, I may be butchering that name, but it's Food Mart. She was permanently disqualified in relation to that store. At the hearing before the district court, not at all before the agency, Mr. Ferrin's counsel alleged that despite that permanent disqualification, she was still operating in a different store called Paradise Food Market. I can go beyond the record if you'd like to give some further explanation for that. I just wondered what was before the court or the agency about that. Nothing, Your Honor. Nothing at all. And that's the underlying factor. There was never a dispute as to his knowledge or whether his mother had been disqualified at any time until the hearing before the district court, and at that time the motion was going to be converted to one for summary judgment because the plaintiff submitted evidence outside of the pleadings that the court considered and the plaintiff then failed to submit any evidence to put that into dispute. So we ask then that the court affirm the decision of the district court. Does the court have any further questions? We do not. Thank you, counsel. Thank you. Your Honor, just a very short rebuttal. Your Honor, if the court looks at Exhibit 10.6, which is the application, it specifically is handwritten under Paragraph 4 on 616.14 that an agent called Mr. Farrow and indicated that his mother is related to him by birth and that she was permanently disqualified. That's what it says in that report. The agency decision after the appeal from the agency further indicates in that decision it was based on that Paragraph 4. It makes absolutely no reference to Paragraph 6 at all. The court will not find that. Secondly, they say there's not an affidavit. And, Your Honor, there is an affidavit. It's Exhibit 1. If one looks at Paragraph 7, and the paragraph states that my client stated under oath that he did not lie under the application that he filed with SNAP. That saying that he did not lie follows through that he did not lie when he said no, his mother was not disqualified. There's one key point. The word is knowingly. Knowingly. Nobody talks about that. Knowingly. That's the reason for permanent disqualification when you look at these CFRs. There's no knowingly. There's no evidence that he knew. In fact, he denied he knew. He thought he said, even under affidavit, he thought he was being truthful. And I think we're just stretching it a little bit. We're making implication on implication on implication. And you asked the counsel whether or not there was any proof in the file that she was disqualified. There is no proof in the file that she was disqualified. We did contest that. Did the agency find she was disqualified? Your Honor, I don't have any record that she's disqualified. I can tell you this, that on December 14th, she turned her SNAP license back into the federal government. I can tell you that. Did the agency make a finding on that? I did not see any findings on the record, Your Honor. The only thing I saw on the record was in the agency's final decision that made reference to a disqualification. There was nothing placed before the court that she had actually been disqualified. And we take into consideration an affidavit in 11.1, we denied that we lied on every single point. And I think there's so many questions of fact here that it should be remanded in fairness. And I just believe that that is the right thing to do in this particular case. I know there's a lot of odd circumstances, but I think this is one of those odd cases. And I think you go back to the three items. I think we have questions of fact, and if tried, a reasonable bearer of trier would rule in our favor, Your Honor. So, thank you. Thank you, counsel. The case will be submitted. Clerk may call the next case.